[No. 5015. Decided September 14, 1905.]

LEOPOLD F. SCHMIDT et al., Appellants, v. OLYMPIA LIGHT & POWER COMPANY, Respondent.[1]

APPEAL — QUIETING TITLE — PLAINTIFFS OUT OF POSSESSION AND LANDS NOT VACANT—FORM OF ACTION—POINT FIRST RAISED IN SUPREME COURT. In an action to quiet title to land, the objection that the plaintiffs are out of possession and that the lands are not vacant or unoccupied, and therefore the action cannot be maintained, goes merely to the form of the action and cannot be raised for the first time in the supreme court.

DEEDS — DESCRIPTION — CONSTRUCTION — ERRONEOUS REFERENCE TO FORMER CONVEYANCES—INCONSISTENT DESCRIPTION OF WATER RIGHTS—INTENTION OF PARTIES. Where a deed excepted certain water rights previously carved out of the estate, describing the same in two ways: (1) by reference to the water specifically describing the volume; and (2) by reference to the deed in which the water right was originally granted, which, however, described a smaller volume of water, and which water deed was also erroneously referred to as recorded in vol. 5, page 9; and a purchase money mortgage is given back to the grantors, also describing the reserved water in two ways, viz.: (1) by reference to the water deed recorded in vol. 5, page 9, and (2) by reference to the deed to the mortgagees, the mortgage expressly granting "the same premises" conveyed to the mortgagees; the intention of the parties, which must control as to the inconsistent descriptions, was to mortgage the identical property conveyed to the mortgagees reserving the water as therein described, and not as described in the water deed, with which the mortgagors and mortgagees were not familiar, as shown by the erroneous reference to the record thereof; since of two inconsistent descriptions, the erroneous one will be rejected as surplusage.

SAME—BONA FIDE PURCHASER—INCONSISTENT DESCRIPTIONS BOTH OF RECORD—CONSTRUCTIVE NOTICE. One claiming under a mortgage containing two inconsistent descriptions of the rights conveyed, one

1 Reported in 82 Pac. 184.

by reference to one deed and the other by reference to another deed, both of record, does not occupy any better position than the original mortgagee, and is not a *bona fide* purchaser, but takes with constructive notice of all the records.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered October 12, 1903, dismissing on the merits an action to quiet title to water rights, upon sustaining a demurrer to the reply.   Reversed.

*George H. Funk, James A. Haight,* and *Pipes & Tifft,* for appellants.

*T. N. Allen (Troy & Falknor,* of counsel), for respondent.

RUDKIN, J.—The plaintiffs are the owners of a certain tract of land in Thurston county, containing one acre.   Inasmuch as the description is by metes and bounds and the particular description not material, we will hereafter refer to it as the "one-acre tract."   The defendant is the owner of a certain four-acre tract adjoining the tract above described.   For similar reasons, we will hereafter refer to it as the "four-acre tract."   Both tracts were originally a part of the Crosby donation claim.

On the 10th day of February, 1892, A. H. Chambers and wife and Robert Frost and wife were the owners of the one-acre tract, and were also the owners of a water power from the Des Chutes river, described as a "volume of water twenty inches deep, four feet seven inches wide, and flowing with a velocity of five hundred and twenty-two feet per minute," coupled with the right to conduct said flow of water across the four-acre tract.   On said 10th day of February, 1892, Duncan B. Finch and wife were the owners of the four-acre tract, subject to the water rights and easements above described.   On the above date, Finch and wife conveyed the four-acre tract to Chambers and Frost, by bargain and sale deed.   This deed was subject to the water rights

and easements already owned by Chambers and Frost, which were described in the Finch deed as follows:

"Subject, nevertheless, to the grants of water power heretofore made by the said parties of the first part within the said described boundaries; that is to say, for the said flouring or grist mill of C. Crosby, heretofore described as 'Crosby's new mill,' a column of water twenty inches deep, four feet seven inches wide, and running with a velocity of five hundred and twenty-two feet per minute, which water power was granted by deed of C. Crosby and wife to C. Crosby & Co., recorded in the office of the county auditor of Thurston county in deed records, Vol. 5, page 9."

On the date of this deed, and as a part of the same transaction, Chambers and wife and Frost and wife mortgaged the four-acre tract to Finch to secure the payment of the purchase price of $15,000. This mortgage was subject to certain water rights, which are described in the mortgage as follows:

"Subject, however, to two grants of water power within the said described boundaries, the first to the flouring or grist mill of C. Crosby, by deed recorded in deed records, Vol. 5, page 9, in the office of the county auditor of Thurston county; the second to Biles and Carter, by deed dated April 9, 1859, and recorded in said auditor's office in deed records, Vol. 4, page 64, being the same premises conveyed by mortgagee and wife to the mortgagors A. H. Chambers and Robert Frost, by deed bearing even date herewith. It is understood by all the parties hereto that said premises are hereby mortgaged for a portion of the purchase price as security for the payment to said mortgagee of a certain promissory note of even date of this mortgage."

It is conceded that the water deed from Crosby and wife to Crosby & Company, referred to in the deed from Finch and wife to Chambers and Frost, as recorded in Vol. 5, at page 9 of the deed records of Thurston county, and, in the mortgage from Chambers and wife and Frost and wife to Finch, as recorded in the same place, described the water power or right as a volume of water that might be drawn

from a pond through a gate three feet wide and one foot deep; but it is alleged in the reply that the water right was afterwards enlarged so as to contain a volume of water twenty inches deep, four feet seven inches wide, and flowing with a veliocity of five hundred and twenty-two feet per minute, as described in the complaint.

The Finch mortgage was afterwards foreclosed, and the defendant has succeeded to all the right, title, and interest included in, or covered by, the mortgage. The record does not show that the plaintiffs, or their predecessors in interest at the time of the mortgage foreclosure, were made parties to that action, or that there was any adjudication in the foreclosure case as to the property actually included, or intended to be included, within the mortgage. The plaintiffs are the successors in interest to Chambers and wife and Frost and wife in the one-acre tract, and such water rights and easements appurtenant thereto as were not included in the Finch mortgage. This action was brought by the plaintiffs to quiet their title to the water right described as "a volume of water twenty inches deep, four feet seven inches wide, and flowing with a velocity of five hundred and twenty-two feet per minute," and also the right of way necessary to conduct the same across the four-acre tract now owned by the defendant.

The answer, in addition to denials, set forth affirmatively the defendant's title under the mortgage and its foreclosure, and prayed that the action be dismissed, and for all proper and equitable relief. Many of the facts above stated were contained in the reply to the answer. The court sustained a demurrer to the reply and, upon the refusal of the plaintiffs to plead further, a judgment of dismissal was entered. From this judgment, the plaintiffs appeal.

The appellants first contend that issues raised by the denials in the answer were not disposed of, and that this will necessitate a reversal of the judgment regardless of the other questions involved. In view of the conclusion we have

reached on the merits, this question becomes immaterial. The respondent, on the other hand, contends, that this is an action to quiet title; that the plaintiffs are out of possession; that the lands are not vacant or unoccupied; and therefore such an action cannot be maintained. This objection only goes to the form of the action, and cannot be raised for the first time in this court. *Bates v. Drake,* 28 Wash. 447, 68 Pac. 961. It does not appear that the objection was raised in the court below, and, had it been, it would only necessitate an amendment of the pleadings, and would not justify a judgment on the merits such as was rendered.

This brings us to the merits of the case. The main question is, what property was included in the mortgage from Chambers and Frost to Finch, under which the respondent claims? By reference to the foregoing statement, it will be seen that the deed from Finch to Chambers and Frost described the water right reserved in two ways: first, by reference to the volume of water; and second, by reference to the record of the Crosby deed by which the water right was granted. It is conceded that a part of this description is erroneous, as the deed therein referred to was not recorded in Vol. 5, at page 9 of deeds, and did not grant the volume of water described in the first part of the description.

The mortgage back from Chambers and Frost to Finch likewise described the water rights reserved in two ways; first, by reference to the record of the Crosby deed granting the water right; and second, by reference to the deed from Finch to Chambers and Frost, as the mortgage expressly states that the mortgaged premises are "the same premises conveyed by mortgagee and wife to the mortgagors A. H. Chambers and Robert Frost by deed bearing even date herewith." And part of this description is also erroneous as the Crosby water deed was not recorded in Vol. 5, at page 9, and the description of the water right reserved was not the same in the Crosby and Finch deeds.

Which of these inconsistent descriptions in the Finch deed, and the Chambers and Frost mortgage, is controlling? In the construction of deeds and mortgages, the object always is to ascertain the intention of the parties. If a deed or mortgage contain two descriptions, one of which is discovered to be erroneous in the light of the surrounding circumstances, the erroneous description will be rejected as surplusage and the other will control. Devlin, Deeds, § 1038; *Haley v. Amestoy,* 44 Cal. 132; *Rutherford v. Tracy,* 48 Mo. 325, 8 Am. Rep. 104; *Scull v. Pruden,* 92 N. C. 168; *Abbott v. Pike,* 33 Me. 204.

In this case, we have no doubt that, if a water right twenty inches deep, four feet seven inches wide, and flowing with a velocity of five hundred and twenty-two feet per minute, had been theretofore granted to Crosby & Company out of the premises conveyed by Finch and wife, the Finch deed would reserve a water right of that volume, and the reference to the Crosby deed and its record would be rejected as surplusage. Turning then to the Chambers and Frost mortgage, it seems apparent that the parties thereto intended to mortgage the identical premises conveyed on the same day by the Finch deed, and nothing more. Had they intended to mortgage other or different property or water rights, they certainly would not have described the mortgaged premises by reference to the Finch deed as being the same premises therein conveyed, nor by reference to the same water deed as was erroneously referred to in the Finch deed.

It must be conceded that the reference in the Finch deed to the Crosby deed as granting a volume of water twenty inches deep, four feet seven inches wide, and flowing with a velocity of five hundred and twenty-two feet per minute, was erroneous. And it must likewise be conceded that the same reference in the mortgage made at the same time, and as a part of the same transaction, was erroneous. How can it be contended that the reference to the Crosby deed was made

advisedly in the mortgage, when it is apparent that it was made erroneously and unadvisedly in the Finch deed executed at the same time? On the other hand, it seems entirely reasonable that the reference to the Finch deed, made at the same time, for a description of the property was made advisedly and intentionally, and not otherwise. The parties are conclusively presumed to have been familiar with the contents of the Finch deed, whereas the record shows they were not familiar with the Crosby deed. The intention of the parties must control, and we can reach no other logical conclusion but that the parties intended to, and did, mortgage the identical premises conveyed by Finch, with the same reservations, and nothing beyond.

Does the respondent here occupy a stronger or better position than the original mortgagee? It claims, that it does; that it is a *bona fide* purchaser for value; that the mortgage only reserved a water right granted by a certain deed therein referred to; and that a reference to such deed only discloses a grant of a water right such as would flow through a gate one foot deep and three feet wide. We cannot agree with this contention. A party cannot rely on so much of a public record as is favorable to his contention, and close his eyes to the remainder. Assuming that the respondent examined the records before its purchase, it not only had notice of the mortgage and the Crosby water deed therein referred to, but also notice of all other instruments in the chain of title, including the deed from Finch and wife to Chambers and wife, particularly referred to in the mortgage itself. In other words, it had constructive notice of all the instruments and all the facts heretofore recited. These were ample to put it upon inquiry, and in the face of such records and such notice, the plea of *bona fide* purchaser cannot prevail.

In view of this conclusion, we do not deem it necessary to inquire into, or decide, the questions of merger or reformation, discussed in the briefs. For the reasons above stated,

the judgment of the court below is reversed, with directions
to overrule the demurrer to the reply, and for further pro-
ceedings not inconsistent with this opinion.

MOUNT, C. J., HADLEY, and DUNBAR, JJ., concur.