[No. 6574. Decided May 22, 1907.]

LEOPOLD F. SCHMIDT *et al.; Plaintiffs and Appellants*, v.
OLYMPIA LIGHT AND POWER COMPANY, *Defendant
and Appellant.*[1]

JUDGMENT—RES ADJUDICATA—IDENTITY OF PARTIES. Where, in an
action for the foreclosure of a mortgage upon premises which were
subject to a water right, the extent of which was in dispute between
the mortgagees and the successors in interest of the grantees of the
water right, the judgment of foreclosure, determining the extent of
the water right against the claims of the grantees thereof, is not
*res adjudicata* as against the original grantor of the water right and
his successors, who were not parties to the foreclosure action.

SAME—QUESTIONS DETERMINED. One who acquired title under
foreclosure proceedings in which it was adjudged, on the only issue
litigated, that the title was subject to a water right, cannot contest
the title to the water right, but is conclusively bound by the decree.

ESTOPPEL—DECREE ADJUDGING TITLE—PURCHASE UNDER—NOTICE—
ACQUIESCENCE—VENDOR AND PURCHASER—DEEDS. Where the owner
of land first conveyed a one-acre tract together with a specified water
right, and then conveyed a four-acre tract subject to the water right
as described in the prior deed, the record of which was recited, but
in the latter deed erroneously described the water as greater in vol-
ume than the amount conveyed in the prior deed, and upon foreclos-
ure of a mortgage upon the four-acre tract, the extent of the water
right was litigated between the mortgagees and the owners of the
water right, and it was adjudged that the four-acre tract is subject to
the lesser volume of water as described in the deed granting the
same, one who stands by with notice of the foreclosure suit is
estopped from afterwards acquiring title to the greater volume of
water exempted from the grant of the four-acre tract, as against the
purchaser at the foreclosure sale relying upon the adjudication that
the land foreclosed was subject only to the lesser right.

VENDOR AND PURCHASER—BONA FIDES—NOTICE. Redemption from
a judicial sale of a one-acre tract and a specified water right appur-
tenant thereto, is not notice to a purchaser of the subservient estate
of any intent on the part of the redemptioner to claim a greater
volume of water than that described in the grant creating the same,
although the grant of the subservient estate excepted such greater
volume.

[1]Reported in 90 Pac. 212.

DEEDS—RESERVATIONS—MISTAKE.  Where a deed to a subservient estate reserved a water right as granted by a prior deed, referring to the record thereof, but described as excepted from the grant a greater volume of water than was granted by the prior deed, subsequent deeds in the chain of title to the water describing the lesser volume of water indicate the abandonment or surrender of the greater volume of water, or that the reservation of such greater volume was by mistake; especially where a corrected deed of the water right, made some time after, described only the lesser volume of water.

VENDOR AND PURCHASER—BONA FIDES—NOTICE—DEEDS.  Where the owner of land conveyed one acre, with a specified water right, and afterwards conveyed four acres subject to the water right as described in the prior deed, but expressly describing a greater volume of water as reserved to the first grantee, and the successors in interest of the four-acre tract had no notice of an unrecorded lost deed granting the larger volume of water, they are not chargeable with notice that the owner of the one-acre tract claimed the larger volume of water reserved from the grant of the four acres.

ESTOPPEL—BY DEED—ESTOPPEL AGAINST ESTOPPEL.  Where two parties claim from the same grantor, and one is estopped by recitals in his chain of title and the other by recitals in his chain of title, the rights of the parties must be adjusted without regard to the estoppel.

VENDOR AND PURCHASER—BONA FIDES—NOTICE—DEEDS.  Where a deed conveying a subservient estate, subject to a water right appurtenant to an estate as granted in a prior deed, reference to which deed is made, describes a larger volume of water as reserved than the amount described in the prior grant, and there is nothing of record to show that the greater volume was ever granted, and no one is in possession of the water or using the same, the holder of the subservient estate is not chargeable with knowledge of the existence of any greater right appurtenant to the dominant estate than the volume described in the grant, and the reservation of the greater right in granting the subservient estate must be rejected as surplusage.

ATTORNEY AND CLIENT—AUTHORITY—NOTICE—ESTOPPEL—EQUITY.  Where an attorney foreclosed a mortgage upon a tract of land subject to a water right, the extent of which was in dispute, and in litigating the question, suppressed knowledge of a lost unrecorded deed which granted to the defendants the greater water right contended for by them, whereby a decree was entered in favor of the plaintiffs adjudging the premises subject to the lesser water right only, the knowledge of the attorney becomes the knowledge of another of his clients who purchased the lesser right shortly after the foreclosure;

who accordingly would not be entitled to equitable relief to obtain the greater water right as against the purchaser at the foreclosure sale.

APPEAL—RESERVATION OF GROUNDS—DISMISSAL. A cross-appeal based upon a contention not raised in the court below will be dismissed.

COSTS—ON APPEAL. Where appellants claimed more than they were entitled to, but successfully defended against respondent's cross-appeal, the supreme court, on modifying the judgment, will award costs in the court below to the respondents, and the costs on appeal to the appellants.

RUDKIN and DUNBAR, JJ., dissenting.

Cross-appeals from a judgment of the superior court for Thurston county, Linn, J., entered August 1, 1906, in favor of the plaintiffs, after a trial on the merits, in an action to quiet title to a water right. Modified.

*T. N. Allen, James B. Howe*, and *Troy & Falknor*, for appellants.

*Geo. H. Funk, James A. Haight, G. C. Israel*, and *M. L. Pipes*, for respondent.

CROW, J.—This action, which was commenced by Leopold F. Schmidt and Johanna Schmidt, his wife, against the Olympia Light & Power Company, a corporation, to quiet title to a water right, has heretofore been in this court. 40 Wash. 131, 82 Pac. 184. After the case was remanded, the pleadings were amended, and the trial judge, after hearing the evidence, without making findings of fact, entered a decree in favor of the plaintiffs for the larger water right, and other equitable relief. The defendant has appealed, and the plaintiffs have cross-appealed, claiming they were not awarded all equitable relief to which they were entitled. Both parties having appealed, we will refer to them as plaintiffs and defendant. By the decision of this court on the former appeal it was determined that the trial court had erred in sustaining the defendant's demurrer to the amended reply and in entering

judgment upon the pleadings without the introduction of evidence. The case is now before us on amended pleadings for trial *de novo*, and we deem it necessary to make a more complete statement of the facts as we find them from the evidence.

The plaintiffs own a certain one-acre tract of land in Thurston county, which lies contiguous to, and in a northeasterly direction from, a certain four-acre tract owned by the defendant. The plaintiffs claim that, as owners of the one-acre tract, they are also owners of an easement in the four-acre tract, consisting of a perpetual right to take from a dam across the Des Chutes river, located upon the four-acre tract, a column of water twenty inches deep, four feet and seven inches wide, and running with a velocity of five hundred and twenty-two feet per minute, together with a right of way for a water flume to conduct the water over the four-acre tract to the one-acre tract. This column of water will hereafter be referred to as the "greater water right." In the original amended answer the defendant denied plaintiffs' right to the greater water right, but in substance admitted that they did own the right to a column of water three feet by one foot, which will hereafter be referred to as the "lesser water right." On the former appeal, the issue raised by the pleadings was whether plaintiffs were entitled to the excess of the greater over the lesser water right, and the case was remanded for further proceedings not inconsistent with that opinion, which would require a trial of that issue on the merits. For a complete understanding of the facts as now presented, a separate statement of the title to each tract becomes necessary, both being deraigned from Clanrick Crosby, Sr., and his wife, common grantors.

THE ONE-ACRE TRACT. On April 11, 1863, Clanrick Crosby, Sr., and Phebe Crosby, his wife, by deed, conveyed to C. Crosby & Company, a copartnership, a certain piece of land eighty by one hundred and fifty feet, on which a new grist mill was then being erected, with the right to "all the water power that may be drawn from the pond by a gate from

the Des Chutes river three (3) feet wide by one (1) foot deep." This deed was recorded in volume 5 at page 96, records of deeds for Thurston county, the land conveyed, being the one-acre tract. Subsequently a correction deed, hereinafter mentioned, and describing the land by metes and bounds, was executed, but without changing the description of the water right. The title to the one-acre tract passed by mesne conveyances to A. H. Chambers and Robert Frost, who held the same from July 9, 1891, until April 29, 1895, when they conveyed to one D. J. Chambers, now deceased. While A. H. Chambers and Robert Frost held the title, numerous judgments were entered against them and became liens on the one-acre tract. Early in 1899, T. N. Allen, as trustee for the judgment creditors, by judicial proceedings, obtained a sheriff's sale to enforce their liens, and on May 6, 1899, purchased the one-acre tract, obtaining from the sheriff a certificate of sale. On March 4, 1896, D. J. Chambers, who held the record title, died intestate. On April 21, 1900, the plaintiff Leopold F. Schmidt obtained a quitclaim deed from the executors, representatives, and legatees of D. J. Chambers, deceased. On May 1, 1900, he redeemed from the sheriff's sale, terminating the right of Allen, trustee, under his certificate of sale, and obtaining the complete title. It will thus be seen that the plaintiffs deraigned their title from Clanrick Crosby, Sr., and wife, under the original deed of April 11, 1863, which granted the lesser water right. A careful examination of the entire record fails to show any deed, mortgage, or other instrument in the chain of title to the one-acre tract, which creates, suggests, or gives notice of any greater water right, although several instruments appear specifically describing the lesser right by the dimensions of three feet by one foot.

THE FOUR-ACRE TRACT. On May 18, 1870, Clanrick Crosby, Sr., and wife, parties of the first part, conveyed to the Washington Water Pipe Manufacturing Company, a corporation, hereinafter referred to as the "pipe company," the

four-acre tract by metes and bounds, the description being succeeded by the following language:

"Subject, nevertheless, to the grants of water power heretofore made by the said parties of the first part within said described boundaries; that is to say, for the said flouring or grist mill of C. Crosby, heretofore described as 'Crosby's new grist mill,' a volume of water twenty inches deep, four feet seven inches wide, and running with a velocity of five hundred and twenty-two (522) feet per minute, which water power was granted by deed of C. Crosby and wife to C. Crosby & Company, recorded in office of the county auditor of Thurston county, in deed records Vol. 5, p. 96.".

The deed to which reference is made conveyed only the lesser water right. By mesne conveyances the title to the four-acre tract passed from the pipe company to D. B. Finch, who, on February 10, 1892, conveyed it to A. H. Chambers and Robert Frost, by deed containing the same recitals of the greater water right with reference to the deed as recorded in volume 5, page 9, for its origin. On the same date, Chambers and Frost, joined by their respective wives, executed and delivered to D. B. Finch a purchase-money mortgage on the four-acre tract for $15,000, the mortgage reciting that it was "subject, however, to the two grants of water power within the said described boundaries, the first to the flouring or grist mill of C. Crosby, by deed recorded in deed records Vol. 5, page 96, in the office of the county auditor of Thurston county; the second to Biles & Carter, by deed dated April 9, 1859, and recorded in the auditor's office, deed records Vol. 4, page 64." The last-mentioned Biles & Carter water right is not in issue in this action. This mortgage was by mesne conveyances transferred and assigned to J. B. Richardson and L. E. Kelly, trustees, who by one George H. Funk, their sole attorney, on February 28, 1899, commenced an action in the superior court of Thurston county to foreclose the same. In this action A. H. Chambers and Robert Frost, their respective wives, numerous creditors, and T. N. Allen, trustee, were defendants. All defendants except Allen defaulted.

None of the executors, legatees, or representatives of the estate of D. J. Chambers, deceased, were parties. A *lis pendens* notice was filed on March 12, 1899. T. N. Allen, trustee, who held a sheriff's certificate of sale to the one-acre tract, filed an amended answer, in which he contended that the one-acre tract was entitled to the greater water right which was a burden upon the four-acre tract. The allegations on which this contention was based were denied by the reply, the plaintiffs alleging that the one-acre tract was only entitled to the lesser right appurtenant thereto. The dimension of the water right was the only issue tried. On February 23, 1900, this issue was on trial determined in favor of the plaintiff mortgagees, who contended for the lesser water right. Foreclosure decree was entered, reciting that the four-acre tract was subject to the lesser right only. Sale was made on April 14, 1900, at which Richardson and Kelly purchased the four-acre tract, receiving a certificate of sale therefor, which on June 1, 1900, they assigned to L. B. Faulkner, trustee, he being the manager of the defendant, the Olympia Light & Power Company; and he on February 19, 1901, assigned to the defendant. On July 6, 1901, a sheriff's deed was executed and delivered to the defendant as such assignee.

The above constitutes a brief outline of the record title to the two separate tracts. About May, 1899, during the progress of the foreclosure proceedings, George Funk, attorney for the plaintiffs, received by mail from Mr. Richardson, one of his clients, a pen and ink copy of what purported to be an unrecorded deed from the pipe company to W. F. Crosby. The supposed original deed, which is shown to have been lost, and will hereinafter be mentioned as the "lost deed," was dated May 20, 1874. It recites the original deed of May 18, 1870, from Clanrick Crosby, Sr., and wife, to the pipe company, its reservation of the greater water right, the fact that it had omitted granting or reserving to C. Crosby, Sr., by express terms, a right of way over the four-acre tract for a flume, or to reserve to him the right to enter upon the four-

acre tract to repair or construct the flume. It then confirmed
the larger water right by express dimensions, and granted a
right of way to W. F. Crosby, with the privilege of going
upon the four-acre tract to construct or repair the flume.
Mr. Funk received this pen and ink copy prior to the trial
of the foreclosure action then being prosecuted by him. He
made a typewritten copy of the pen and ink copy, and re-
turned the latter to Mr. Richardson on May 24, 1899.
Mr. Funk did not disclose his knowledge of this copy to any
person until he communicated the fact of its existence to the
plaintiff, Leopold F. Schmidt, who was one of his clients.
He and Schmidt both claim that he made such communica-
tion after Schmidt had purchased, paid for, and redeemed
the one-acre tract. Schmidt in this action now relies upon
this lost deed to show the enlargement of his water right from
the lesser right originally created by the Crosby deed of
April 11, 1863, to the greater right now claimed by him.
Their statements as to when Funk told Schmidt of the lost
deed are not contradicted by any witness. The record, how-
ever, indicates that Funk, while acting as attorney for Rich-
ardson and Kelly, was also representing Schmidt who was
obtaining title to the one-acre tract.

On April 14, 1900, the sheriff's sale was made in the fore-
closure suit. On May 2, 1900, Schmidt's quitclaim deed of
April 21, 1900, from the representatives of D. J. Chambers,
deceased, was filed for record by Funk. Schmidt redeemed
from the Allen certificate of sale on May 1, 1900. His cer-
tificate of redemption was filed for record by Funk on May
2, 1900. Order of confirmation of the sheriff's sale in the
foreclosure proceeding was made on May 21, 1900, on motion
of the plaintiffs. Schmidt testified that Funk had been his
attorney for some time; that before he bought the quitclaim
deed he had obtained from Crosby & Company an old ab-
stract of title to the one-acre tract, which he showed to Funk;
that Funk gave him a verbal opinion, but on cross-examina-
tion Schmidt evaded all efforts of defendant's counsel to ob-

tain from him a statement of that opinion, and finally testified that he acted on his own knowledge which he obtained from the abstract itself and from other sources, in concluding that the one-acre tract was entitled to the larger water right. When asked to show any transfer in the abstract mentioning the larger water right, he was unable to do so, and his counsel admitted that it did not mention such larger water right. He denied any knowledge of the adjudication contained in the foreclosure proceedings. Mr. Funk at first testified that, according to his recollection, he received the pen and ink copy of the lost deed after the foreclosure suit had gone to judgment, and while sale was being made; but upon being pressed to further examine his correspondence, he discovered his letter of May 24, 1899, in which he had returned the pen and ink copy to Mr. Richardson, showing that he must have received it some eight or nine months prior to the trial. It is possible that he may have been equally at fault in his recollection as to when he first told Schmidt of the existence of the copy of the lost deed. Schmidt tries to avoid notice to himself of the foreclosure proceedings, or of the copy of the lost deed in Funk's possession at all times prior to the purchase made by him; but his evidence on this point does not seem entirely definite or satisfactory. Considering all the evidence in the light of surrounding circumstances and his own actions, we incline to the view that he was mistaken, and that he did learn of Funk's copy of the lost deed and of the adjudication in foreclosure proceedings prior to his purchase. However, for the purposes of this opinion, we will assume that he did not have actual knowledge of the latter.

In this action the defendant, by its second amended answer, made since the former appeal, pleaded the adjudication of the water right in the foreclosure suit, and claiming that the plaintiffs occupied a position of privity with T. N. Allen, trustee, insisted that the existence of the lesser right and nonexistence of the greater right have, as against the plaintiffs, become *res adjudicata*. To this defense the trial court sus-

tained a demurrer interposed by the plaintiffs. The defendant now contends that the trial court erred in sustaining this demurrer, insisting that the decree of foreclosure is *res adjudicata* against the plaintiffs. This contention cannot be sustained, for although the plaintiffs redeemed the one-acre tract from Allen, trustee, they only deraign title from their grantors, the representatives of D. J. Chambers, deceased, who were not parties to the foreclosure action. After redemption the D. J. Chambers estate, and its grantees were in the same position they would have occupied had no certificate of sale been issued to Allen. *De Roberts v. Stiles*, 24 Wash. 611, 64 Pac. 795. Although we hold that the foreclosure proceedings were not *res adjudicata* as against the plaintiffs, we will, as they are fully shown by the evidence, hereafter consider the same in further discussing the relative equitable rights of the parties.

W. F. Crosby, the grantee in the lost deed, has given his deposition in which he testified that the lost deed was executed and delivered on May 20, 1874, by Samuel W. Percival, president of the pipe company; that it was witnessed by Elwood Evans, and Charles Wood, that it was acknowledged before Elwood Evans a notary public; that Evans was his attorney; that on Evans' advice he did not record the deed, on account of pending litigation; that Percival and Evans have both been dead for many years; that the deed was placed in the safe of Crosby & Company; that Charles Wood, the other witness, cannot be accounted for; that W. F. Crosby has for many years past lived in California or Oregon; that after diligent search he has been unable to find the original deed, and that the copy made by Funk from the pen and ink copy is a true and correct copy. His brother, Walter Crosby, now living in Olympia, testified that he remembered the lost deed, seeing it in the safe of Crosby & Company at Tumwater, and that he last saw it in 1880. A. H. Chambers testified, that about 1874 he knew there was some question about the right of

24—46 WASH.

W. F. Crosby to go upon the four-acre tract to construct
or repair the flume; that he knew the dispute was settled;
but he knew nothing of the lost deed. Robert Frost testified
that several years since he received from D. B. Finch, former
owner of the four-acre tract, and a nonresident for whom he
was agent, a letter making some indefinite reference to an
unrecorded deed, and that the letter was lost. Frost, however,
knew nothing of the contents of the deed. This is the sub-
stance of all evidence of any knowledge of the lost deed by
any persons whomsoever. It is not shown that the defendant,
its manager Faulkner, or any of its agents or officers, had
any knowledge or notice of the unrecorded lost deed, or any
copy thereof, prior to the commencement of this action or
prior to their purchase of the four-acre tract.

Since the former appeal, the defendant, by its second
amended answer, further pleaded an abandonment by plain-
tiffs' grantors of the lesser water right to which they were
formerly entitled, and now asks that the same be determined
in this action. The defendant is in no position to make this
contention. It admitted the lesser right in its amended an-
swer prior to the former appeal. It also knew of the ad-
judication in the foreclosure suit that the plaintiffs' grantors,
then represented by Allen, trustee, were entitled to the lesser
right. The only contested issue in that action was the differ-
ence in quantity between the two rights. The defendant ob-
tained title under that foreclosure proceeding, and it is con-
clusively bound by the adjudication that the owners of the
one-acre tract are entitled to the lesser right.

The evidence shows that water in some quantity was used
by the flour mill for many years, and afterwards by a shingle
mill and other mills, on or below the one-acre tract. It is not
entirely clear as to how much water was used. The plaintiffs
claim the entire greater water power was utilized. It does
appear, that after the year 1896 or 1897, the use was entirely
abandoned; that the flume decayed, went out, and was de-

stroyed, and that at the time the defendant obtained title it was not being used by any person.

The defendant now contends, that the plaintiffs have not obtained any title to the greater water right; that they are not pressing their claim in good faith; that they bought with actual notice of the adjudication in the foreclosure proceedings; that they have not deraigned the greater right by any record title from the United States; that they cannot claim title under the lost deed as against defendant, as it was never recorded and no notice thereof to the defendant has been shown; that Mr. Funk who represented the plaintiffs Richardson and Kelly in the foreclosure suit, concealed the deed from the court in the trial of that action; that thereafter he placed a copy of the instrument in the possession of the plaintiffs in this action; that he at no time disclosed to the defendant the existence of the unrecorded deed; that those acts show lack of good faith upon the part of the plaintiffs; that the records through which the plaintiffs deraigned title show that the easement appertaining to the one-acre tract was the smaller easement only; that outside of the unrecorded deed, notice of which was never brought to the attention of the defendant, there was no conveyance of any larger easement, and that no rights to any larger easement have been established by prescription, adverse user, or otherwise. On the other hand, the plaintiffs contend that the defendant is estopped from denying their title to the greater right by reason of the recitals contained in the recorded deeds constituting defendant's chain of title, and especially by reason of the recitals of the deed of May 18, 1870, from Clanrick Crosby, Sr., and wife to the pipe company.

Peculiar conditions are shown by the record: (1) The plaintiffs are compelled to go into the chain of title to the four-acre tract to obtain any evidence or record notice of the existence of the alleged greater water right as appurtenant to the one-acre tract; (2) All deeds affecting the four-acre tract which mention the greater right do so by recitals only,

but also refer to the original deed of April 11, 1863, to the one-acre tract, recorded in volume 5, at page 96, for the origin of the right. The latter deed grants the lesser right only; (3) The holders of title to the four-acre tract refer to the record title to the one-acre tract to show that the water right actually created, existing, and appurtenant thereto is the lesser right only. The situation appears to be that in every instance the one party refers to the record chain of title of the other party to sustain his own contention. On the former appeal, when we construed the pleadings only, we said: "A party cannot rely on so much of a public record as is favorable to his contention, and close his eyes to the remainder." The existence of the lost deed was not shown or mentioned on the former appeal; nor were the record titles to the two several tracts disclosed as they now appear. Under the facts now presented by the evidence, the rule above announced should be applied to the plaintiffs as well as the defendant.

The plaintiffs claim that they have obtained a quitclaim deed; that they have redeemed from Allen, trustee, and that they did so without knowledge of the copy of the lost deed held by Funk. If they then had any record basis for their claim to the larger right, they must have found it in the chain of title to the four-acre tract, as it nowhere appeared in their own chain of title to the one-acre tract. Here we find a servient and a dominant estate, which seem to be dependent in the matter of their titles the one upon the other. A person in making an examination of the title to the water right appertaining to the dominant estate was compelled to look into the title to the servient estate to find any suggestion of the greater right. If the plaintiffs could only find evidence of the creation and existence of the greater right in the title to the servient estate, they should have examined that title down to the date of their purchase of the dominant estate. Had they done so they would have found a *lis pendens* notice of record, advising them of the foreclosure proceedings in

which judgment had been entered, declaring that the dominant estate in the one-acre tract only had appurtenant thereto the lesser right which was a burden on the servient estate or the four-acre tract. We hold that, under these peculiar circumstances, they should have taken notice of the foreclosure proceedings, because of the dependent character of these titles, coupled with the further fact that no water right whatever was then in use, and it devolved upon them to ascertain whether it had been surrendered, released, or abandoned to or in the servient estate. They knew they could not establish the greater right from the record chain of title to the one-acre tract, the dominant estate. Had they taken notice of and examined the foreclosure proceedings, they would have obtained actual knowledge that the defendant's grantors were obtaining title to the four-acre tract in good faith for a valuable consideration, relying upon an adjudication that it was subject only to the lesser water right. Having failed to do this, they should now be estopped from claiming the greater water right, unless they can show that the defendant had actual notice of the unrecorded lost deed or knowledge of facts sufficient to put it upon notice. This they have utterly failed to do.

The plaintiffs, however, claim that, on May 1, 1900, they redeemed the Allen certificate; that Faulkner, the defendant's manager, knowing this fact, did thereafter, on June 30, 1900, accept an assignment of the certificate of sale to the four-acre tract; that he did so with notice of the redemption, and of the plaintiffs' claim to the greater water right. We do not think this contention can be sustained. Faulkner purchased from the original holders of the certificate of sale, who bought on April 14, 1901, prior to any redemption being made by the plaintiffs. In any event, he was entitled to presume that the plaintiffs were redeeming for the purpose of securing title to the one-acre tract with the admitted lesser water right appurtenant thereto. He could then purchase the four-acre tract, thinking he would obtain all of the water

power, subject only to the lesser right.   We fail to see how his knowledge of the redemption by plaintiffs constituted notice sufficient to inform the defendant that the plaintiffs were then claiming a greater easement than the lesser water right. From the facts then known it could have been readily presumed that the plaintiffs were purchasing the lesser right, and that the defendant was obtaining the four-acre tract and the remaining water power, subject to such lesser right only.

The original deed from Clanrick Crosby and wife to the pipe company, which the plaintiffs say should have put the defendant on notice, was executed on May 18, 1870.   This date becomes material.   No other instrument originally indicating the existence of such greater right can be found of record in either chain of title, although this instrument was thereafter mentioned in subsequent deeds to the four-acre tract.   It appears that subsequent to the date of this deed, the following instruments were recorded in the chain of title to the one-acre tract, and again recite the lesser water right by the dimensions of one foot by three feet.

Deed from William Billings, sheriff, to C. Crosby, dated March 11, 1874, and filed June 10, 1874, on the one-acre tract.

Deed from Clanrick Crosby, Jr., executor of the estate of Zenas Crosby, deceased, to Clanrick Crosby, Sr., dated July 27, 1865, filed June 10, 1874, on the one-acre tract.

Deed from Clanrick Crosby, Sr., to William F. Crosby, dated May 15, 1874, filed May 20, 1874, on the one-acre tract.

Deed from Nathaniel Crosby, Jr., to William F. Crosby, dated May 1, 1874, filed July 27, 1875, on the one-acre tract.

Mortgage from Clanrick Crosby, Sr., to Marshall Blinn, dated May 15, 1874, filed May 15, 1874, on the one-acre tract.

These instruments were all recorded after the record of the deed of May 20, 1870, and four of them were executed after that date.   In two of them William F. Crosby was

named as grantee.   It will be noted that he was named as grantee in the lost deed, executed about the same time, to confirm the greater water right, and that these two deeds running to him recited the lesser water right by specific dimensions as being three feet by one foot.   These deeds in the plaintiffs' own chain of title indicate either that the greater right had been abandoned or surrendered, or that the deed of May 20, 1870, from Clanrick Crosby, Sr., to the pipe company, was erroneous in stating by dimensions that the greater right had been reserved, and that it correctly referred to the deed of April 11, 1863, which originally created the lesser right.   There is another peculiar feature of the plaintiffs' title to the one-acre tract.   The original deed of April 11, 1863, creating the lesser right, did not describe the one-acre of land conveyed by metes and bounds.   On March 19, 1873, a correction deed was executed by Clanrick Crosby, Jr., Martha F. Crosby, George W. Biles, P. L. Biles, J. H. Naylor, Cecilia Naylor, W. F. Crosby, Walter Crosby, and Fanny Crosby, successors in interest to Clanrick Crosby, Sr., and Phebe Crosby, his wife, then deceased.   It definitely described the one-acre tract by metes and bounds.   This correction deed was of later date than the deed of May 20, 1870, from Clanrick Crosby, Sr., to the pipe company upon which the plaintiffs now rely for notice to the defendant, but this correction deed, although carefully drawn, utterly fails to make any correction as to the dimensions of the water right appurtenant to the one-acre tract, although at that date there nowhere appeared in the chain of title to the one-acre tract any suggestion or hint that the greater right had been created.   This would again indicate that the deed of May 20, 1870, to the pipe company, was erroneous in reciting the larger right by dimensions.   This correction deed was filed for record on June 10, 1874, after the execution of the alleged unrecorded lost deed creating the greater water right.

Another circumstance appears from the record.   It will be remembered that the unrecorded lost deed was executed by

the pipe company on May 20, 1874. Nearly two years prior to that date, the pipe company on July 29, 1872, had mortgaged the four-acre tract to one D. B. Finch. This mortgage was foreclosed in an action in which W. F. Crosby, the grantee in the lost deed, was not a party; but as his deed was not recorded, he was, in the absence of any showing of knowledge in the mortgagee, bound thereby. Foreclosure decree was entered on October 2, 1874. Sale was made under the decree, and on November 24, 1876, the sheriff of Thurston county executed and delivered a deed to D. B. Finch. This foreclosure and sale related back to July 29, 1872, the date of the mortgage. As the lost deed thereafter executed by the mortgagor had never been recorded, and as it nowhere appears that Finch, the mortgagee, and the plaintiff and purchaser in the foreclosure proceeding ever had any actual or constructive notice of the lost deed, all rights granted by such lost deed have ceased and have been determined as against Finch, and all parties thereafter holding under him, including the defendant. No attempt has been made to show that Finch, prior to. the foreclosure sale, had any notice of the unrecorded lost deed.

If the defendant is estopped by the recitals in its chain of title, the plaintiffs are also estopped by the recitals in their chain of title.

"An estoppel against an estoppel, as Lord Coke says, setteth the matter at large. According to this rule no one can set up an estoppel by deed against the estoppel arising from his own grant. In the same way, the setting up of an estoppel by deed may be prevented by an estoppel *in pais* as against the grantee." 11 Am. & Eng. Ency. Law (2d ed.), 392.

An estoppel against an estoppel sets the matter at large. Thus, if both parties claim under the same person, and one is estopped by one deed and the other is estopped by another deed, both made by that person, one estoppel offsets the other, and the rights of the parties are to be adjusted without regard to any estoppel. *Carpenter v. Thompson*, 3 N. H. 204, 14 Am. Dec. 348.

Coming now to the question of notice to the defendant, let it be assumed that it had sufficient notice from the recitals in its chain of title to put it on inquiry. What would it have found as the result of such inquiry? It might have gone through the entire record of all instruments constituting the chain of title to the one-acre tract, the dominant estate, and it would only have found the lesser right created, mentioned, or suggested. It would have been unable to find in either chain of title any instrument of record actually creating the greater right, but would have found deeds to the one-acre tract, subsequent to the deed in its own title, giving the supposed notice, which subsequent deeds again and again recognize and by express description giving measurements, convey the lesser right, of three feet by one foot, as appurtenant to the one-acre tract. The lost deed could not have been found. The only party to it then surviving lived in another state. An examination of the property would have shown that none of the power was being used by any of the plaintiffs' grantors, or any one claiming under them, or that it was being utilized by any person whomsoever in any quantity whatsoever. The flume had gone out, had rotted away, and nearly disappeared. No one was in actual physical possession or occupancy of either the greater or the lesser right. In the foreclosure proceedings an attempt to establish the greater right as appurtenant to the one-acre tract, made by T. N. Allen, trustee, then holding under the plaintiffs' grantors, had failed. Where else could the defendant go to obtain knowledge of any greater right, or where could it go to obtain a quitclaim deed for any such supposed outstanding right? The record fails to show facts sufficient to constitute notice to defendant or to cause it to make any greater or more diligent inquiry than it did make, or which would lead to an actual knowledge of the existence of the alleged greater right.

Actual notice to the defendant being eliminated, the plaintiffs' contentions, simply stated, are (1) that the greater

water right was granted and confirmed by the lost deed executed on May 20, 1874; (2) that the recitals in the original deed of May 18, 1870, from Clanrick Crosby, Sr., and wife to the pipe company, and subsequent deeds on the four-acre tract referring thereto, gave notice to the defendant and its grantors of the greater right. How could the deed of May 18, 1870, be notice of the contents of another deed not then in existence but executed four years later? Yet this is the plaintiffs' position, for they are compelled to rely exclusively on the later deed as the instrument that increased the lesser water right to the greater and confirmed the greater. The previous deed of May 18, 1870, was concededly erroneous either in reciting the larger water right by dimensions, or in referring to the deed of April 11, 1863, as the instrument which made the original grant. If the reference to the deed last mentioned was erroneous, then there must have been an intention to refer to some other deed making an original grant of the greater right, but no such other deed was then, or ever had been, in existence, nor was the lost deed executed until four years thereafter. The reference to the deed of April 11, 1863, must have been correctly made. It described the lesser right as appurtenant to the one-acre tract. The necessary result of this situation is that the deed of May 18, 1870, was only erroneous in reciting the larger right by dimensions, and that such recital when shown to be erroneous does not estop the defendant. It must be rejected as surplusage. *Schmidt v. Olympia Light etc. Co.*, 40 Wash. 131, 136, 82 Pac. 184.

The plaintiffs now claim under a quitclaim deed and redemption from the sheriff's sale. They come into court asking equity, although they claim they failed to take notice of the foreclosure proceedings or of the position occupied by the defendant. They do not seek to recover on the strength of their own title to the one-acre tract, but upon the alleged weakness of the defendant's title to the four-acre tract, as

shown by a recital in the deed of May 18, 1870, from Clan-rick Crosby, Sr., and wife to the pipe company. They are now, and all along have been, represented by the same attorney who foreclosed the mortgage on the four-acre tract. He retained in his own breast the knowledge of the existence of the pen and ink copy of the lost unrecorded deed upon which they now rely. His knowledge was their knowledge. The circumstances of the purchase of title by Schmidt and the redemption from Allen, trustee, in point of time closely followed, or were intimately connected with, the prior acts of Schmidt's attorney who had foreclosed the mortgage for Richardson and Kelly and also had in his possession the copy of the lost deed. Mr. Pomeroy, in volume 2 of the third edition of his work on Equity Jurisprudence, in sections 670 and 671, announces the general doctrine that, for the purpose of binding a principal, notice received by his agent must have been obtained by or imparted to the agent, in pursuance of his authority, in his character as agent; but in section 672 he also states an exception to the general rule in the following language:

"The foregoing requisite, general as it is in its application, is subject to an important and well-settled limitation, equally depending upon motives of expediency. Where the transaction in question closely follows and is intimately connected with a prior transaction in which the agent was also engaged, and in which he acquired material information, or where it is clear from the evidence that the information obtained by the agent in a former transaction was so precise and definite that it is or must be present to his mind and memory while engaged in the second transaction, then the foregoing requisite becomes inapplicable; the notice given to or information acquired by the agent in the former transaction operates as constructive notice to the principal in the second transaction, although that principal was a complete stranger to and wholly unconnected with the prior proceeding or business."

*Snyder v. Partridge*, 138 Ill. 173, 29 N. E. 851, 32 Am. St. 130; *Brothers v. Bank of Kaukauna*, 84 Wis. 381, 54 N. W.

786, 36 Am. St. 932; *McClelland v. Saul*, 113 Iowa 208, 84 N. W. 1034, 86 Am. St. 370.

Under all the records, facts, and circumstances of this case as disclosed by the evidence, we hold that the plaintiffs are only entitled to the lesser water right.

The plaintiffs have based their cross-appeal upon a contention that the trial court did not give them as great a right to go upon the four-acre tract and locate a flume as that to which they are entitled. The defendant has moved to dismiss this cross-appeal for the reason the question which it involves was not presented to the lower court. This contention should be sustained, although upon the merits we are satisfied that the plaintiffs have obtained from the trial court as much equitable relief in this regard as they are entitled to receive. The honorable trial court erred in holding that the plaintiffs were entitled to the greater water right as appurtenant to the one-acre tract.

The cause is remanded to the superior court, with instructions to modify the judgment heretofore entered by entering a final decree adjudging that the plaintiffs are entitled to the lesser water right only as appurtenant to the one-acre tract. In all other respects the judgment will stand affirmed. The defendant having unsuccessfully contested the right of the plaintiffs to any water power whatever, the plaintiffs will recover costs in the superior court. The defendant will recover costs on this appeal.

HADLEY, C. J., FULLERTON, MOUNT, and ROOT, JJ., concur.

RUDKIN, J. (dissenting)—In the light of our former opinion, the questions involved on the present appeal are few and simple and words cannot obscure them. The defendant claims title to the four-acre tract referred to in these several opinions under a mortgage executed by A. H. Chambers and Robert Frost and their respective wives on the 10th day of February, 1892. This mortgage was confessedly subject to

a certain water right theretofore granted out of the four-acre tract, by the predecessors in interest of Chambers and Frost to the predecessors in interest of the plaintiffs. The plaintiffs contend that such water right was *a column of water twenty inches deep, four feet and seven inches wide, and flowing at a velocity of 522 feet per minute,* while the defendant contends that the right was limited to a *volume of water that might be drawn from a pond through a gate three feet wide and one foot deep.* A water right answering *both* of these descriptions was reserved in the deed of the four-acre tract from Duncan B. Finch and wife to Chambers and Frost, executed on the date of the mortgage under which the defendant claims, and in prior deeds of the same tract. On the former appeal we held explicitly that the Chambers and Frost mortgage was subject to *the greater water right* now claimed by the plaintiffs, if as a matter of fact the predecessors in interest of the mortgagors had conveyed such greater water right to the predecessors in interest of the plaintiffs prior to the execution of the mortgage.

On the trial had after the cause was remanded, it was clearly proved that the Washington Water Pipe Company, one of the predecessors in interest of the defendant, conveyed the greater water right now claimed by the plaintiffs to W. F. Crosby, one of the predecessors in interest of the plaintiffs, long prior to the execution of the Chambers and Frost mortgage, and the court so found. It is manifest, therefore, that the mortgage under which the defendant claims did not cover or include the greater water right now claimed by the plaintiffs and awarded to them by the court below. Has the defendant acquired any other or greater rights than those covered by and included in the Chambers and Frost mortgage? The majority concede that it acquired no greater rights by the mortgage foreclosure, and this is manifestly true as neither the plaintiffs, nor those under whom they claim, were made parties to that action. But while the majority concede that the foreclosure judgment is not binding on the plaintiffs

or their predecessors in interest because not parties thereto, yet they assert that a notice of *lis pendens* was filed and attempt to predicate some sort of an estoppel on that judgment. This is a novel argument. The rights of the plaintiffs to the greater water right have never been questioned in any judicial proceeding to which they or their predecessors in interest were parties, until the present action was instituted, and yet they are estopped by a judgment to which they are strangers in every sense of the word. I will dismiss this argument without further comment. Is the defendant a *bona fide purchaser?* We decided on the former appeal that it was not, using the following language:

"A party cannot rely on so much of a public record as is favorable to his contention, and close his eyes to the remainder. Assuming that the respondent examined the records before its purchase, it not only had notice of the mortgage and the Crosby water deed therein referred to, but also notice of all other instruments in the chain of title, including the deed from Finch and wife to Chambers and wife, particularly referred to in the mortgage itself. In other words, it had constructive notice of all the instruments and all the facts heretofore recited. These were ample to put it upon inquiry, and in the face of such records and such notice, the plea of *bona fide* purchaser cannot prevail."

For the purpose of this dissent it is perhaps sufficient to say that that opinion, whether right or wrong, has become the law of this case; but, untrammeled by precedent, I could not reach a different conclusion. The very last deed in the defendant's chain of title, executed on the same date as the Chambers and Frost mortgage, recites that it is: "Subject, nevertheless, to the grants of water power heretofore made by the said parties of the first part within the said described boundaries; that is to say, for the said flouring or grist mill of C. Crosby, heretofore described as 'Crosby's new mill,' *a column of water twenty inches deep, four feet seven inches wide, and running with a velocity of five hundred and twenty-two feet per minute,* which water power was granted by deed

of C. Crosby and wife to C. Crosby & Co. recorded in the office of the county auditor of Thurston county in deed records, vol. 5, p. 9." It is true that no deed was of record at the page indicated, and that a deed recorded at a different page of the same volume conveyed the lesser water right, de-, scribed in an entirely different manner from that already given. What was the duty of the defendant under such circumstances?. An error in the description of the water right reserved and theretofore conveyed was apparent. Had it a right to assume, without inquiry, that the *particular* description given of the water right reserved from the grant was erroneous and that a deed recorded at a different place from that indicated contained the correct description, or was it put upon inquiry? These questions would seem to admit of but one answer.

"It is a familiar principle that every person taking a deed is charged with notice of all recitals contained in the instruments making his chain of title. 'The principle of equity is well-established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deeds, or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient contained in any deed or record, which a prudent purchaser ought to examine, to induce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the facts so contained.' " Devlin, Deeds (2d ed.), § 1000.

"The true doctrine on this subject is, that where a purchaser has knowledge of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a *bona fide* purchaser." *Williamson v. Brown,* 15 N. Y. 354, cited with approval in *Sengfelder v. Hill,* 21 Wash. 371, 58 Pac. 250.

Nor is the scope of the inquiry limited by the record as might be inferred from the majority opinion. Devlin, Deeds,

§ 1000, *et seq.; Sengfelder v. Hill, supra.* The defendant not only had notice of the claim that the greater water right had been conveyed and reserved from the recitals in its deeds, but in addition, the foreclosure proceedings through which it claims title showed *the exact nature and extent of that reservation.* Equity rewards the vigilant, but the majority places a premium on negligence and ignorance. *Say nothing and see nothing* is the rule by which future purchasers are to be guided. Much is said in the majority opinion as to the manner in which the plaintiffs acquired the greater water right, the amount they paid for it, and the conduct of certain parties connected with the mortgage foreclosure, but these questions are wholly foreign to the issues in this case, and I will not discuss them. The plaintiffs established their legal right to the relief awarded to them in the court below as against any equity or claim of the defendant. I will add, in conclusion, that on the former appeal this court held that the plaintiffs were entitled to recover on a given state of facts, and those facts were established beyond controversy on the trial below. The trial court entered judgment in obedience to, and in strict compliance with, the mandate of this court, and now that judgment is reversed. A certain amount of conflict in judicial decisions is unavoidable, but a direct and irreconcilable conflict between two decisions in the same case is inexcusable and deplorable. The judgment should be affirmed.

DUNBAR, J., concurs with RUDKIN, J.