133 P.3d 498 (2006)
132 Wash.App. 724
Raymond and Theresa DICKSON, husband and wife, Appellants,
v.
Don B. KATES and Valerie J. Kates, husband and wife, Respondents.
No. 32771-6-II.
Court of Appeals of Washington, Division 2.
May 2, 2006.
*500 Mark G. Passannante, Attorney at Law, Portland, OR, for Appellants.
Don B. and Valerie J. Kates, Battleground, WA, Pro Se Respondents.
VAN DEREN, J.
¶1 Raymond and Theresa Dickson appeal the trial court's decision upholding a restrictive view covenant that purported to benefit property belonging to their neighbors. Finding the deed conveying the restrictive covenant did not comply with the statute of frauds, and that the Dicksons had no notice of restrictive covenants against their property, we reverse.

FACTS
¶2 The parties own adjoining land in Clark County. The Dicksons own tax lots 1 and 119. Don Kates and Valerie Klein[1] (a married couple) own tax lot 99. This dispute arose out of a restrictive view covenant executed by both property owners' predecessors in interest that purported to benefit the Kates' property by prohibiting the Dicksons from planting any trees or erecting any structures blocking the Kates' view.
¶3 In March 2003, the Dicksons brought an action to quiet title and obtain declaratory relief declaring the restrictive covenant favoring the Kates invalid.

I. PROPERTY BACKGROUND
¶ 4 In 1969, Darla Kellogg and her husband acquired a 160 acre parcel of land that includes tax lots 1, 96, 99, and 119. In 1981, the Kelloggs divorced and Darla Kellogg became the sole owner of the parcel. The divorce decree was recorded in Clark County.
¶ 5 In 1983, Kellogg conveyed lot 96 to the Henker family. Lot 96 adjoins lot 99 to the north. The deed conveying lot 96 included a restrictive view covenant burdening lots 1 and 119.[2] The restrictive covenant contained a precise legal description of the burdened land.[3] This deed and restrictive covenant were recorded under auditor's file number XXXXXXXXXX on June 27, 1983 and rerecorded under auditor's file number XXXXXXXXXX on January 17, 1984, and established the legal description of Kellogg's remaining property that is at issue here.
¶ 6 In January 1984, Kellogg conveyed tax lot 99 (the Kates property) to Cecil and Nelda Andrews (Kates' remote predecessors in title). Kellogg retained the land to the west of lot 99, described in the 1983 deed and restrictive covenant to the Henkers. The Andrews wished to obtain the same view guarantee that Henker's had on lot 96 so they asked that a restrictive view covenant be included in their deed. Kellogg agreed, but rather than use the legal description contained in the Henker's deed, the Andrew's deed stated:
The grantor herein does hereby agree that the land lying immediately to the west of the property herein conveyed is restricted as to having any tress or structures that will unreasonably block the view of the property herein conveyed, and said restrictions shall run with the land lying to the west of the property herein described.
CP at 31. This deed was recorded in "Auditor's File # XXXXXXXXXX" on January 13, 1984, relating to lot 99. CP at 32. The restrictive covenant was never recorded on the land Kellogg retained located west of Lot 99, 40 acres of which the Dicksons acquired.
¶7 The Andrew's built a home on lot 99. The house and the property are generally higher than the land to its west and there it has a view across lots 1 and 119 of Vancouver, the Columbia River to Portland, and the Coastal Range. Subsequently, the Andrews sold lot 99 to Ihor Wolosenko. The statutory *501 warranty deed conveying lot 99 to Wolosenko did not include mention of any beneficial interest through a restrictive covenant on land to the west of lot 99. Wolosenko conveyed lot 99 to the Kates by statutory warranty deed and the Wolosenko-Kates deed also did not include mention of or reference to a restrictive covenant on the west-lying land.

II. CURRENT DISPUTE
¶8 The Dicksons purchased lot 119 from Christopher and Suzanne Kellogg[4] in 1998 by statutory warrant deed. They subsequently built a house on the lot. In 2000, they purchased lot 1 from Wolosenko and Victoria Street.[5] When the Dicksons purchased lots 1 and 119, they were not aware of the restrictive covenant benefiting lot 99 and their deeds did not mention it. Stewart Title Company, who performed the title search on behalf of the Dicksons, issued title insurance. Stewart Title Company found no mention of or reference to a restrictive covenant on lots 1 and 119 and thus, the title report did not inform the Dicksons of it.[6]
¶9 The Dicksons learned of the restrictive covenant after Ray Dickson walked his property and noticed that lot 100 was for sale. Lot 100 is situated directly south of the Kates' lot 99 and east of the Dicksons' lot 1. The real estate brochure advertising lot 100 stated that it had a view to the west. Ray thought this odd because his lot 1 was directly west of lot 100 and his trees on lot 1 blocked any view from lot 100.[7] When Ray called the real estate agent selling lot 100, the agent informed him that lot 100 had a beneficial interest in a restrictive covenant burdening lot 1. Subsequently, Ray learned that Kellogg's deed conveying lot 99 (the Kates' property) to the Andrews had contained an interest in a restrictive view covenant on land to the west.

III. PROCEDURAL HISTORY
¶ 10 The Dicksons brought an action to quiet title and to obtain a declaratory judgment declaring invalid the restrictive covenant purportedly burdening their lots. In upholding the covenant, the trial court first held that the parties were dealing with a covenant rather than an easement and found that the language was specific enough to bind Darla Kellogg's successors on lots 1 and 119.[8] Further, it found the Kates' to be in vertical privity with "their predecessors as successors to the land involved in the original restrictive view covenant contained in the 1984 [deed]." CP at 33.
¶11 The trial court concluded that (1) the parties had actual and constructive notice of the 1984 restrictive view covenant; (2) the covenant ran with the benefited and burdened land; (3) it touched and concerned the land; (4) it was enforceable between the original parties (Darla Kellogg and the Andrews); and (5) the original parties intended to, and did bind all successors in interest. The court awarded the Kates $200 in attorney fees.

ANALYSIS

I. STANDARD OF REVIEW
¶12 Where the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. Org. to Pres. Agric. Lands v. Adams County, 128 Wash.2d 869, 882, 913 P.2d 793 (1996). "`Substantial evidence' exists when there is a sufficient quantum of proof to support the trial court's *502 findings of fact." Org. to Pres. Agric. Lands, 128 Wash.2d at 882, 913 P.2d 793. We need only review findings of fact to which error has been assigned and findings to which no error is assigned are verities on appeal. We review questions of law de novo. Ed Nowogroski Ins., Inc. v. Rucker, 137 Wash.2d 427, 436-37, 971 P.2d 936 (1999).

II. COVENANT
¶ 13 On appeal, the Dicksons argue that (1) the view restriction covenant in the deed from Kellogg to Andrews lacked a sufficient legal description of the burdened estate; (2) the court erred when it found that they had actual notice of the restriction; and (3) the court erred when it found they had constructive notice of the restriction.
¶ 14 Neither party challenges the trial court's finding of fact (actually a conclusion of law) that the provision in question is a restrictive view covenant rather than an easement. Further, an easement is a "right, distinct from ownership, to use in some way the land of another, without compensation." City of Olympia v. Palzer, 107 Wash.2d 225, 229, 728 P.2d 135 (1986). A restrictive covenant limits the manner in which one may use his or her land. City of Olympia, 107 Wash.2d at 229, 728 P.2d 135. The distinction between the two is that an easement allows its holder to go upon the land possessed by another and a covenant imposes upon the possessor restrictions on how he or she may use the land. 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW, §§ 2.1, 3.1, at 80, 123 (2004). Here, the Kates seek to impose a restriction on how the Dicksons may use their land, thus the court did not err when it found that the language in the Kellogg-Andrews deed had the characteristics of a covenant.
¶ 15 A covenant is: "[An] agreement or promise of two or more parties that something is done, will be done, or will not be done. In modern usage, the term covenant generally describes promises relating to real property that are created in conveyances or other instruments." Hollis v. Garwall, Inc., 137 Wash.2d 683, 690, 974 P.2d 836 (1999) (quoting 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60.012[2], at 60-65 (1998)).
¶ 16 Generally there are two types of covenants; equitable and real. But distinctions between the two have largely vanished in Washington law.[9] And neither the Dicksons nor the Kates distinguish between the two. A real covenant runs with the land when:
(1) the covenant[] must have been enforceable between the original parties, such enforceability being a question of contract law except insofar as the covenant must satisfy the statute of frauds; (2) the covenant must "touch and concern" both the land to be benefited and the land to be burdened; (3) the covenanting parties must have intended to bind their successors in interest; (4) there must be vertical privity of estate, i.e., privity between the original parties to the covenant and the present disputants; and (5) there must be horizontal privity of estate, or privity between the original parties.
Lake Limerick Country Club v. Hunt Mfg. Homes, Inc., 120 Wash.App. 246, 254, 84 P.3d 295 (2004) (quoting Lake Arrowhead Cmty. Club, Inc. v. Looney, 112 Wash.2d 288, 294-95, 770 P.2d 1046 (1989)) (emphasis added).
¶ 17 In order to bind successors, an equitable covenant must be (1) a promise, in writing, which is enforceable between the original parties; (2) which touches and concerns the land or which the parties intend to bind successors; and (3) which is sought to be enforced by an original party or a successor, against an original party or successor in possession; (4) who has notice of the covenant. Hollis, 137 Wash.2d at 691, 974 P.2d 836.
¶ 18 Here, we evaluate (1) whether the promise between the original parties was a real covenant that had to satisfy the statute *503 of frauds; or (2) whether the agreement between Kellogg and the Andrews was an equitable covenant requiring that the Dicksons have actual or constructive notice in order for it to be enforced against their land.[10]

A. Enforceability of the Real Covenant
¶19 The Dicksons argue that the covenant did not run with the land and cannot be enforced because the description of the burdened land was not precise enough for it to comply with the statute of frauds. The Kates counter that the description is sufficient because a person of reasonable intelligence would understand that the parties intended to burden the 40 acres lying immediately to the west of lot 99.
¶20 The trial court concluded that the covenant satisfied the statute of frauds, thus we review this legal conclusion de novo. Rucker, 137 Wash.2d at 436-37, 971 P.2d 936.
¶21 Enforceability of covenants between the original parties is based on contract law. Lake Limerick, 120 Wash.App. at 254, 84 P.3d 295 (citations omitted). But in order to be enforceable between the original parties, a covenant must also satisfy the statute of frauds. Lake Limerick, 120 Wash. App. at 254-55, 84 P.3d 295 (citations omitted).[11]
¶22 RCW 64.04.010 requires that every conveyance or encumbrance of real property shall be by deed, and RCW 64.04.020 requires that every deed shall be in writing. Lake Limerick, 120 Wash.App. at 259, 84 P.3d 295. And a deed concerning an interest in land must contain a description of the property conveyed.[12]Howell v. Inland Empire Paper Co., 28 Wash.App. 494, 495, 624 P.2d 739 (1981). To comply with the statute of frauds, the description of the land must be "sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description." Howell, 28 Wash.App. at 495, 624 P.2d 739 (quoting Bigelow v. Mood, 56 Wash.2d 340, 341, 353 P.2d 429 (1960)); see also Berg v. Ting, 125 Wash.2d 544, 551, 886 P.2d 564 (1995) (holding that a deed must contain sufficiently definite description of a servient estate in order to have a valid easement). An agreement with an inadequate description is void. Howell, 28 Wash.App. at 495, 624 P.2d 739.
¶23 Here, the phrase "the land immediately to the west" is not sufficient to identify the burdened property without looking to other sources. See, e.g., Howell, 28 Wash.App. at 495, 624 P.2d 739. There is no way to ascertain from the description in the Andrews' deed how much land the grantor (Kellogg) intended to burden.[13] Further, it is unclear whether both lots 1 and 119 were meant to be burdened. In order to determine exactly what was encumbered, the court would have had to erroneously rely on oral testimony.[14]Howell, 28 Wash.App. at 495, 624 P.2d 739 (quoting Bigelow, 56 Wash.2d at 341, 353 P.2d 429). The statute of frauds was not met *504 in the 1984 Kellogg-Andrews deed, thereby rendering the restriction void. See, e.g., Howell, 28 Wash.App. at 495, 624 P.2d 739. The Kates cannot rely on the Kellogg-Andrews deed as a real covenant to restrict the Dicksons' property.

B. Equitable Covenants and the Notice Requirement
¶ 24 Because the real covenant fails to burden Dicksons' land due to the statute of frauds, and because of the uncertain nature of the applicability of the statute of frauds to equitable covenants,[15] we analyze whether the Dicksons' property is burdened as a result of an equitable covenant. The only issue regarding an equitable covenant is whether the Dicksons had notice that such an encumbrance was intended by Kellogg and Andrews.
¶25 One of the key differences between equitable and real covenants is that an equitable covenant binds successors in possession of burdened land only if they have notice of the covenant or if they acquired the land without giving value. 17 WASH. PRAC., § 3.16 at 154-55.[16] "A bona fide purchaser is one who has acquired land for a valuable consideration and who [is] innocent of a prior claim against the land with which he is sought to be charged." 17 WASH. PRAC., § 3.16, at 155. Here, it was not disputed that the Dicksons gave value when they purchased lots 1 and 119. Thus, they are only bound by an equitable covenant if they had notice.
¶26 Notice may be either actual or constructive. 17 WASH. PRAC., § 3.16, at 155. The Kates argue that the Dicksons had constructive notice because the deed granting lot 99 to the Andrews in 1984 separated Kellogg's land, creating the eastern boundary of lots 1 and 119, thereby making the Kellogg-Andrews conveyance part of the Dicksons' chain of title. The Dicksons counter that the trial testimony shows that they did not have actual notice (Ray testified that he did not know about the covenant until he saw the real estate sign) and that their deeds did not contain any reference to the Kellogg-Andrews covenant. Furthermore, it was the Kellogg-Henker deed and covenant that established the legal description of the land Kellogg later sold to the Dicksons. Thereafter, there was no need to refer to other sources to determine the legal description of the land acquired by the Dicksons and its chain of title.
¶27 We agree with the Dicksons that the record does not contain any evidence supporting the trial court's finding of fact that they had actual notice of the 1984 deed containing the promise of a restrictive covenant on lands to the west of lot 99. The trial court's finding therefore fails to support its legal conclusion that an equitable covenant burdens Dicksons' property based on actual knowledge. Org. to Pres. Agr. Lands, 128 Wash.2d at 882, 913 P.2d 793.
¶ 28 Thus, we must decide whether the Dicksons had constructive knowledge. Both parties cite to case law from other jurisdictions discussing whether properties from a common grantor are within each other's chain of title. We have been unable to find any published Washington law directly bearing on this question, but there is some authority indicating that our courts and our recording statutes regard properties with a common grantor as having separate chains of title once they are segregated and have separate legal descriptions. Schmidt v. Olympia Light & Power Co., 46 Wash. 360, 371-73, 90 P. 212 (1907).
¶29 The Kates argue that the greater weight of authority dictates that the Dicksons are deemed to have had constructive notice of the attempt by Kellogg and the Andrews to burden the property they acquired from Kellogg because Kellogg's conveyance to Andrews established a boundary line between lot 99 and the land retained by Kellogg. But the evidence contradicts their *505 position. Kellogg created the legal description of the Dicksons' property in 1983 when she legally described it as the property burdened by the Henker's restrictive covenant. Thereafter, its chain of title followed that description.
¶ 30 The Kates recognize that our Supreme Court discussed at length separate chains of title for adjoining parcels from a common grantor in Schmidt, 46 Wash. at 371-73, 90 P. 212. Kellogg's property west of lot 99 was separated by legal description in the Henker conveyance. The subsequent conveyance to the Andrews did not add to the legal description of the property later acquired by the Dicksons. Thus, the chains of title for lots 1, 119 and 99 diverged before Kellogg sold lot 99 to the Andrews.
¶ 31 Furthermore, our recording statutes are intended to provide constructive notice to land possessors who have restrictions burdening their land. See RCW 65.08.070 (race-notice recording act). If a restriction is recorded, any subsequent purchaser is assumed to have constructive notice. Pioneer Sand & Gravel Co. v. Seattle Constr. & Dry Dock Co., 102 Wash. 608, 619, 173 P. 508 (1918); Murphy v. City of Seattle, 32 Wash. App. 386, 392, 647 P.2d 540 (1982) (dictum). Where existing property is described, the index and the recorded document give notice only as to matters within its chain of title. Koch v. Swanson, 4 Wash.App. 456, 459, 481 P.2d 915 (1971). Thus, one searching the index has a right to rely upon the index and recorded documents and is not bound to search the record outside the chain of title of the property presently being conveyed. Koch, 4 Wash.App. at 459, 481 P.2d 915.
¶32 It is unrefuted that neither Kellogg nor Andrews recorded notice of an intended view restriction on lots 1 or 119, so notice was not in the direct chain of title for lots 1 and 119. Furthermore, the 1984 Kellogg-Andrews deed contained an indefinite and inadequate description of the burdened land. Stewart Title professionally searched the chain of title on lots 1 and 119 and did not find any reference to a covenant burdening them. Therefore, a reasonable search of the chain of title on lot 1 and lot 119 did not give notice that these lots were burdened.
¶33 Thus, we hold that the Dicksons did not have constructive notice of the covenant burdening their land. Because they gave valuable consideration for lots 1 and 119 and they had no notice, they take the property free from any equitable covenant restricting the use of their property.
¶ 34 We reverse and remand for entry of a declaratory judgment that lots 1 and 119 are not burdened by any claimed restrictions benefiting lot 99.
We concur: HOUGHTON, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] The court documents refer to Kates and Klein as simply Kates, but the couple states in their appellate brief that this is an error because Valerie's last name is Klein. For the sake of uniformity, we continue to refer to them as Kates.
[2] This covenant is not at issue in this case.
[3] The clerk's papers include a copy of this deed with the covenant but the copy is illegible. Brief of Appellant, Appendix, at 6-7 contains a legible legal description of the land Kellogg retained that was burdened by the restrictive covenant benefiting Henkers. Dicksons later acquired 40 of the 50 acres Kellogg retained when she sold to Henkers.
[4] Darla Kellogg sold lots 119, 1, and 106 to Charles and Valerie Kellogg. Valerie then conveyed by quit claim deed lots 119, 1, and 106 to Charles. Charles then conveyed lot 1 back to Darla.
[5] In 1997, Darla Kellogg conveyed lot 1 to Ihor Wolosenko and Victoria Street.
[6] In their reply brief, the Dicksons objected to the Kates' reference to a lawsuit between the Dicksons and Stewart Title. We sustain their objection for lack of support in the record and thus, did not consider Kates' references to such litigation.
[7] The trees on lots 1 and 119 do not currently block lot 99's view.
[8] Both parties consistently refer to both easements and covenants in their briefing.
[9] We recognized in Lake Limerick Country Club v. Hunt Mfg. Homes, Inc., that Washington generally does not distinguish between real covenants and equitable covenants. 120 Wash.App. 246, 253-54, 84 P.3d 295 (2004) (citations omitted). But the court did recite the two different standards the Washington Supreme Court had used to determine the validity of real versus equitable covenants. Limerick, 120 Wash.App. at 254, 84 P.3d 295.
[10] The Kates raise the argument that the Dicksons should be barred from this action to quiet title under the theory of laches. But the Kates cite to no law to support their argument. Without argument or authority to support it, an assignment of error is waived. Smith v. King, 106 Wash.2d 443, 451-52, 722 P.2d 796 (1986). We need not consider arguments that are not developed in the briefs and for which a party has not cited authority. RAP 10.3(a)(5); State v. Dennison, 115 Wash.2d 609, 629, 801 P.2d 193 (1990).
[11] See 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW, § 3.2. at 127-28 (1995) for a full discussion of the statute of frauds question regarding real covenants in Washington.
[12] "Most writers on the subject of running covenants and also the Restatement of Property agree that [covenants] are interests in land." 17 WASH. PRAC. § 3.2, at 127.
[13] The Kates cite to case law that states that the court can look to the circumstances surrounding the signing of the deed to determine the intent of the parties. They misunderstand the applicability of this law. The court need only determine intent of the parties when looking at the requirement that the parties intend to bind successors. The statute of frauds requires an adequate description of the real property. Howell v. Inland Empire Paper Co., 28 Wash.App. 494 495, 624 P.2d 739 (1981).
[14] In any event, the trial testimony of both Kellogg and Mr. Andrews indicated that they never discussed the extent of property they intended to burden.
[15] 17 WASH. PRACTICE, § 3.11, at 149-50.
[16] There is a developing line of cases dealing with equitable restrictions or covenants when dealing with a common scheme or plan, usually in subdivisions. See generally 17 WASH. PRAC., § 3.20 at 159-65. Where such a common scheme exists, the covenant or restriction need not be in the possessor's deed so long as they have notice.